FILED'11 MAR 10 09:08USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JANELL HOWARD,

            Plaintiff,                 Civil No. 09-6257-AA

                                     OPINION AND ORDER

    vs.

CITY OF COOS BAY, an Oregon
Municipal Corporation; and
CHARLES E. FREEMAN,

             Defendants.

------------------------------------------------

Beth Creighton
Michael E. Rose
Creighton & Rose
500 Yamhill Plaza Building
815 S.W. Second Avenue
Portland, Oregon 97204
      Attorneys for Plaintiff

Mark Sherman
Karen O'Kasey
Hoffman, Hart & Wagner
1000 S.W. Broadway, 20th Fl.
Portland, Oregon 97205
      Attorneys for Defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Janell Howard filed suit against the City of Coos Bay ("City") and her former supervisor, Charles Freeman, alleging whistleblower retaliation under Or. Rev. Stat. § 659A.203(1) and wrongful discharge against the City, and violations of her First Amendment and due process rights under 42 U.S.C. § 1983 against the City and Freeman. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 on all of plaintiff's claims. Plaintiff also moves for partial summary judgment on her due process claims.

The court heard oral argument on the motions on February 24, 2011. For the reasons given below, plaintiff's motion is DENIED; defendants' motion on the wrongful discharge claim, the due process claims, and the whistleblower claim is GRANTED; and defendants' motion on the First Amendment retaliation claim is DENIED.

## I. BACKGROUND

From 1998 until September 2008, the City employed plaintiff as its Finance Director. In this capacity she directed, managed, and controlled the financial activities of the City, including financial planning, budgeting, accounting record-keeping, and monitoring revenues and expenditures. She also advised the City Council of the City's financial condition. The Finance Director is an at-will employee who is supervised by the City Manager.

The City contracted with Robert Wall and his CPA firm Wall & Wall to perform the City's 2005-2006 audit. Plaintiff and Wall had

2 - OPINION AND ORDER

worked together on City audits in the past.  Problems arose during the audit when Wall submitted a supplemental bill.

Wall sent an email to plaintiff and Joyce Jansen on October 8, 2006, with a supplemental bill for $938.  At that time, Jansen was serving as Interim City Manager and was plaintiff's supervisor. Wall's email explained that the bill was for audit revisions that were necessary after plaintiff sent changes to Wall that affected the audit.  The following day, plaintiff replied and contested that the changes caused enough extra work to justify a supplemental bill and stated that she would recommend that the City not pay it. Plaintiff told Wall she felt he was taking advantage of Jansen's inexperience and that charging extra for work that fell within the contract was unethical and reportable to the Oregon Board of Accountancy.

On October 11, 2006, Jansen sent plaintiff a memo that expressed concern regarding the tone of plaintiff's response to Wall and indicated that some City Council members were concerned as well.  At least one City Council member (and later Mayor), Jeff McKeown, expressed displeasure over plaintiff's email to Wall. McKeown told plaintiff that she would have been fired for such conduct in the private sector.  Wall Dep. 120:12-15 (July 29, 2010).  Another City Council member noticed that McKeown was unhappy with plaintiff's reaction to Wall's bill.  Daily Dep. 10:3-11:3 (Apr. 29, 2010).

3 - OPINION AND ORDER

The City Council eventually approved the $938 invoice, and another for $11,500 submitted by Wall to research the potential ethical problems with continuing the audit in light of plaintiff's allegations against him.  Plaintiff wrote a memo to her file on October 25, 2006, that detailed her version of the events with Wall and her explanation of why she felt that the City should not pay Wall's supplemental bills.  She wrote a similar letter to Jansen and the City Council on December 19, 2006, adding that she disagreed with the City's handling of the matter and that "as a citizen," she felt that paying Wall was a "gross waste of funds." Creighton Decl. (First), Ex. 14, p. 3.

In November 2006, Wall requested that plaintiff sign a document stating that she would not report him to the Oregon Board of Accountancy.  Plaintiff refused.

The City never officially reprimanded plaintiff for her role in the audit dispute; however, in January 2007 plaintiff found a copy of a draft reprimand letter from Jansen lying on a copier.

On June 17, 2007, Charles Freeman became the new City Manager and plaintiff's supervisor.  On June 25, 2007, after the City came to agreement with Wall on the billing issues, plaintiff filed a complaint against Wall with the Oregon Board of Accountancy.  A few weeks after sending the complaint, plaintiff notified Freeman, who asked her to withdraw the complaint.  Plaintiff refused.  On July 16, 2007, Freeman wrote a letter of suspension to plaintiff pending

4 - OPINION AND ORDER

an investigation that she exceeded her authority as Finance Director and violated a personnel directive. Freeman notified plaintiff in writing on July 24, 2007, that the investigation revealed that she violated the directive. The letter was eventually removed from plaintiff's file. After the suspension, plaintiff felt that Freeman was unnecessarily critical of her.

On August 24, 2008, plaintiff was stopped from leaving Wal-Mart with unpaid food items totaling $12.57. According to plaintiff, she had intended to pay for the items.[1] Plaintiff called Freeman that evening to tell him what had happened. The next day, August 25, 2008, Freeman suspended plaintiff pending an investigation that he initiated through the Oregon State Police, and on August 26, 2008, Freeman issued a press release regarding plaintiff's suspension. The next day, an article appeared in the local paper entitled, "Coos Bay City Official Arrested for Shoplifting." Creighton Decl. (First), Ex. 29.

The Oregon State Police concluded that there was insufficient evidence that plaintiff intended to take items without paying for

---

[1]Plaintiff recounted her version of the Wal-Mart events in her declaration. While the clerk was scanning her items, plaintiff realized that she needed another gallon of milk. She told the clerk to ring her up for the milk and that she would retrieve it after checking out. After plaintiff had picked up the milk, her children asked for some chicken and french fries from the deli, and plaintiff obliged. This apparently side-tracked plaintiff, who then headed toward the door with the unpaid deli items. After being stopped, she apologized and offered to pay for the items. Howard Decl. (Second), ¶2.

them.   During its investigation the Oregon State Police also learned of allegations that plaintiff had switched prices on products at a local Albertsons.   The Coos County District Attorney did not press charges based on any of the allegations against plaintiff.

On September 12, 2008, Freeman gave plaintiff notice that he would hold a pre-disciplinary hearing on September 15, 2008, to discuss the Wal-Mart and Albertsons incidents.   The day after the meeting, Freeman terminated plaintiff's employment.   Thereafter, the local paper published numerous articles about her termination and the associated investigation.

On September 14, 2009, plaintiff filed her complaint in this court.   She claims that the City and Freeman violated her free speech and due process rights under the First and Fourteenth Amendments.   She also claims that the City violated Oregon's whistleblowing statute and is liable for wrongful discharge.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The materiality of a fact is determined by the substantive law on the issue.   T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).   The authenticity of a dispute is determined by whether the evidence is such that a

6 - OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### III. DISCUSSION

A. First Amendment Retaliation

Plaintiff brings a First Amendment retaliation claim against the City and Charles Freeman. To succeed on her claim, plaintiff must show that: (1) she spoke on a matter of public concern; (2) she spoke as a private citizen and not as a public employee; and (3) her protected speech was a substantial or motivating factor in the adverse employment action. Eng v. Cooley, 522 F.3d 1062, 1070 (9th Cir. 2009). Plaintiff bases her claim on two communications: (1) her December 19, 2006, letter to Jansen and the City Council

and (2) her June 25, 2007, complaint to the Oregon Board of Accountancy.

### 1. Matter of Public Concern

Plaintiff asserts two potential matters of public concern in this case: the alleged gross waste of funds by the City and the alleged unethical behavior by Wall. Although a close case, the court finds as a matter of law that plaintiff spoke on a matter of public concern when she complained to the Oregon Board of Accountancy.

"Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah County, 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "[M]isuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern." Id. at 425. However, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).

To make this determination, courts look at the entire record, including the content, form, and context of a given statement.

Johnson, 48 F.3d at 422 (citing Connick, 461 U.S. at 147-48).
While the Ninth Circuit favors a liberal construction of the public
concern requirement, Roe v. City & County of San Francisco, 109
F.3d 578, 586 (9th Cir. 1997), "[i]n a close case, when the subject
matter of a statement is only marginally related to issues of
public concern, the fact that it was made because of a grudge or
other private interest or to co-workers rather than to the press
may lead the court to conclude that the statement does not
substantially involve a matter of public concern." Johnson, 48
F.3d at 425. Whether the subject of speech is a matter of public
concern is a question of law. Eng, 522 F.3d at 1070.

Plaintiff accused the City of wasting public funds in her
December 19, 2006 letter to Jansen and the City Council. Plaintiff
stated, "[Wall's supplemental invoice] seems to be a gross waste of
funds. I am concerned and I think that the citizens of Coos Bay
would be concerned, as well." Sherman Decl., Ex. 8, p. 3.
Generally, matters of public concern include complaints about a
misuse of funds. See Johnson, 48 F.3d at 425. However, defendants
emphasize that the bulk of plaintiff's December 19 letter recited
plaintiff's version of the dispute with Wall and criticized Wall's
handling of the audit. When viewed in context, the letter is
fairly characterized as a personal workplace grievance and not as
a matter that is critical to the public's decision-making process.

9 - OPINION AND ORDER

See Sherman Decl., Ex. 8, p. 2-4.[2]   That plaintiff complained internally to Jansen and the City Council also indicates a lack of public relevance.   See Johnson, 48 F.3d at 425.

Thus, plaintiff's passing reference in the letter to poor decision-making by the City does not elevate her workplace dispute over Wall's billing into a matter of public concern.   Desrochers v. City of San Bernadino, 572 F.3d 703, 711 (9th Cir. 2009) ("[T]he fact that speech contains passing references to [government functions] incidental to the message conveyed weighs against a finding of public concern.")(internal quotations and citation omitted).   Therefore, I agree with defendants that plaintiff's single reference to a "gross waste of funds" does not alter the letter's character as a private workplace dispute and only "marginally related" to a matter of public concern.

---

[2]Plaintiff began her approximately two page December 19 letter by explaining that she was "concerned that ... councilors have ... received misinformation from Rob Wall" and that she was "taking this opportunity to clarify [the audit issues]." Plaintiff first described the events surrounding Wall's invoice and her response, including her belief that it was her job to question City expenditures.   Next, plaintiff described the process of Wall's and the City's financial settlement on the audit and why she disagreed with the settlement.   She disputed Wall's characterization of the audit process and his claims on the number of changes that plaintiff submitted.   Plaintiff also expressed disapproval that Wall and the City would ask her to sign a statement that she would not report Wall to the Oregon Board of Accountancy.   Finally, she stated concern over current problems with the audit, namely that Wall had not completed his work but was continuing to charge the City for professional services.   Sherman Decl., Ex. 8, p. 2-4.

However, plaintiff's complaint to the Oregon Board of Accountancy does not resemble a personal workplace grievance. In her complaint, plaintiff stated that she was concerned about Wall's "disregard for our profession and the general public" and felt that not reporting the incident would "[harm] the public accounting profession and the general public who relies on and trusts the CPA." Sherman Decl., Ex. 10, p. 4. She stated that she believed that Wall violated the Oregon Board of Accountancy's Code of Professional Conduct as well as Oregon statutes and administrative rules related to accounting practices.[3]

Defendants contend that plaintiff's complaint, when viewed in context, is rooted in plaintiff's perception that Wall's October 8, 2006, email blamed her for causing extra auditing work. Therefore, defendants maintain that her complaint to the Board is an extension of her private workplace dispute. However, plaintiff did not write her complaint to the Oregon Board of Accountancy in her official capacity, and she submitted her complaint to an outside regulating

---

[3]Plaintiff listed the following examples of how Wall's behavior allegedly ran afoul of these standards: (1) violating his contract with the City by invoicing the City for additional work prior to obtaining the required authorization; (2) failing to provide the City with a detailed explanation for the additional charges; (3) asking plaintiff to sign a statement saying she would not report him to the Oregon Board of Accountancy; (4) failing to communicate in a timely manner regarding options for going forward after his independence on the audit was compromised; (5) making slanderous comments about plaintiff to the media; and (6) sending a "questionable" final bill to the City. Id.

body rather than her employer. Further, plaintiff's complaint could fairly be viewed as implicating the City's management of funds given its association with Wall.

Thus, plaintiff's complaint to the Oregon Board of Accountancy regarding Wall's alleged violations of Oregon accountancy regulations could probably "fairly be considered [as relating] to [a] matter of political, social, or other concern to the community." Johnson, 48 F.3d at 422 (internal quotations omitted). Therefore, I find as a matter of law that plaintiff spoke on a matter of public concern.

## 2. Private citizen or public employee

Defendants also contend that plaintiff cannot succeed on this claim because she spoke in the context of her official duties. Public employees do not receive First Amendment protection when they "make statements pursuant to their official duties." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). "[S]tatements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, ... or if the speech was not the product of perform[ing] the tasks [the employee] was paid to perform." Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal quotations and citations omitted). Speech related to official duties can be contrasted with speech that "[bears] similarities to [actions taken] by numerous citizens every day." Garcetti, 547 U.S. at 422.

"The question of the scope and content of a plaintiff's job responsibilities is a question of fact," but the "ultimate constitutional significance of the facts as found" is a question of law. Posey, 546 F.3d at 1129-30. "The inquiry should be practical and look beyond the job description to the duties the employee actually performs." Garcetti, 547 U.S. at 424.

In Freitag v. Ayers, the Ninth Circuit distinguished between speech made as an employee and speech made as a citizen. 468 F.3d 528 (9th Cir. 2006). There, when a prison guard's supervisors did not take action on her complaints about inmate misconduct, id. at 533-34, she reported the misconduct and lack of response to the Director of Prisons, her State Senator, and the Inspector General, who launched an investigation. Id. at 534-35. On review of her First Amendment retaliation claim, the court found that plaintiff submitted the original reports to her superiors in her official capacity and not as a citizen. Id. at 546. However, the court found that her statements to the Senator and the investigating agency were made in her capacity as a private citizen, even though "she initiated the communications while at work [and] they concerned the subject matter of her employment." Id. at 545.

Like Freitag, plaintiff first communicated her concern in her role as an employee. Plaintiff's October 9 email to Wall and December 19 letter to Jansen and the City Council were sent in her capacity as Finance Director, and the content of the December 19

13- OPINION AND ORDER

letter reflects plaintiff's belief that she had a duty to bring the Wall billing issues to the attention of her supervisors. Sherman Decl., Ex. 8, p. 1. ("As a City Finance Director, my job includes managing the City funds to maximize and protect; I ensure that expenditures are properly authorized and documented before payment. As a professional and a custodian of taxpayers' money, I am sure you expect no less of me.").[4] Even in her memo to her file, dated October 25, 2006, plaintiff stated that, "[i]t is ... an important part of my job to make sure that every City expenditure is authorized. I would have questioned a similar situation from any department." Sherman Decl., Ex. 7, p. 3. Further, these statements are consistent with plaintiff's job description, which states that her responsibilities include, "[managing] funds to maximize and protect public resources" and "[advising] the City Manager and Council regarding the financial condition of the city." Creighton Decl. (First), Ex. 1.

However, plaintiff's complaint to the Oregon Board of Accountancy is similar to Freitag's complaint to the investigating agency. As in Freitag, plaintiff initially complained to her supervisor but eventually contacted an outside agency. There is no evidence that plaintiff had any sort of duty to report unethical behavior to outside agencies, and plaintiff began the complaint by

---

[4]In addition, plaintiff signed the letter "Janell K. Howard, City of Coos Bay Finance Director." Sherman Decl., Ex. 8, p. 4.

14- OPINION AND ORDER

stating that she was writing as a professional CPA and not in her capacity as a City employee. Sherman Decl., Ex. 10, p. 1.

Defendants maintain that the complaint was premised on her personal dispute with Wall, that the billing issue was resolved when plaintiff made the complaint, and that the complaint was made against Wall, and not the City. These distinctions are not persuasive. The fact that the billing dispute arose from plaintiff's job is not dispositive. See Freitag, 468 F.3d at 545. Defendants do not explain or cite to any authority as to why the timing or the target of the complaint is relevant.

Therefore, plaintiff presents a genuine issue of material fact whether she spoke as a citizen when she wrote to the Oregon Board of Accountancy.

### 3. Causation

Plaintiff must show that her protected speech was a substantial or motivating factor in her termination. Eng, 522 F.3d at 1070. Circumstantial evidence can be enough for the jury to infer causation between the two events. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). However, the fact that the employer knew about the employee's speech is not enough, in and of itself, to survive summary judgment. Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751 (9th Cir. 2001). The employee must also show at least one of the following types of evidence: (1) evidence that the events were close enough in time

that a jury logically could infer that termination was in retaliation for the speech; (2) evidence that the employer expressed opposition to the protected speech, either to the employee or to others; or (3) evidence that the employer's given explanations for termination were "false and pretextual". Id. at 751-52 (internal citation omitted).

Here, fifteen months elapsed between plaintiff's Oregon Board of Accountancy complaint in June 2007 and her dismissal in September 2008. This length of time generally precludes a finding of causation absent other evidence. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (twenty months insufficient proximity); Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (nine months insufficient); Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 887 (9th Cir. 2003) (twelve months insufficient).

However, plaintiff provides sufficient evidence to create a genuine issue of material fact that her employer expressed opposition to her speech by suspending her for complaining to the Oregon Board of Accountancy. See Schwartzman v. Valenzuela, 846 F.2d 1209, 1210-12 (9th Cir. 1988) (genuine issue of material fact existed where doctor, who was fired after speaking publicly about alleged hospital mismanagement, "presented a memorandum from the hospital's clinical director warning him that he was not authorized to speak out on certain employee matters").

16- OPINION AND ORDER

Likewise, Freeman suspended plaintiff after she complained to the Oregon Board of Accountancy. In her declaration plaintiff stated that Freeman asked her to withdraw the complaint. Howard Decl. (First), ¶20. Freeman then suspended her, pending an investigation, after she did not comply with his request. Creighton Decl. (First), Ex. 24. The suspension letter stated that her complaint to the Oregon Board of Accountancy was a "unilateral ... action [that] was not approved by ... the City and is unacceptable." Id. Defendants argue that Freeman's suspension letter only expressed his disapproval of plaintiff's failure to notify him. See Freeman Dep. 70:20-71:6 (Apr. 19, 2010). However, Freeman's deposition testimony on the suspension could be construed as substantive disapproval with plaintiff's actions. Freeman Dep. 84:7-15. ("In my opinion, the action she took was outside her pay grade.... She took action that affected the city. She's not city manager. She's not an elected official. In my opinion that wasn't her call to make.").

Plaintiff also alleges she was treated differently by Freeman after her suspension. She states that he made threatening comments that made her fear for her job. Howard Decl. (First), ¶23. Her performance review in January 2008 was generally positive, however Freeman wrote that she "need[ed] to be primarily focused on finance [department], not local politics." Creighton Decl. (First), Ex. 25. In June 2008 Freeman reprimanded her for entering his office

to retrieve an appraisal document while he was out of the office. Creighton Decl. (First), Ex. 26.  Plaintiff claims that this was a common practice that had never been an issue previously.  Howard Decl. (First), ¶24.

Finally, a jury could find that City Council members' and the City Manager's displeasure with plaintiff's stance on the Wall bill continued from the first email that plaintiff sent in October 2006 until after she complained to the Oregon Board of Accountancy and potentially up until the time she was fired.  See Creighton Decl. (First), Ex. 7; Wall Dep. 120:12-15; Daily Dep. 10:3-11:3; Howard Decl. (First), ¶16; Creighton Decl. (First), Ex. 20.  When all of these facts and allegations are viewed in context, and with all inferences drawn in her favor, plaintiff presents a genuine issue of material fact as to whether her speech was a substantial or motivating factor in the City's decision to terminate her. Therefore, summary judgment is improper on this claim.

B. Due Process

Plaintiff asserts that she had both a property interest and a liberty interest in her job, and that the City terminated her without due process of law in violation of the Fourteenth Amendment.  The court finds that plaintiff does not have a property interest in her position as Finance Director, and that her liberty interest is not implicated in this case.

///

18- OPINION AND ORDER

### 1. Property Interest

Procedural due process protections are afforded to those people who have a property interest created by an "independent source, such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Lawson v. Umatilla County, 139 F.3d 690, 692 (9th Cir. 1998). Under Oregon law, a property right to continued employment can be created by a statute or regulation, see Brady v. Gebbie, 859 F.2d 1543, 1549 (9th Cir. 1988), or by city personnel policies or handbooks. See Brunick v. Clatsop County, 204 Or. App. 326, 332-33 (2006). Otherwise, "at-will" employees are not entitled to constitutional due process protection. Lawson, 139 F.3d at 692 (citing Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)).

Even if language in an employee handbook or personnel policy seems to create a property interest in a job, "Oregon courts have consistently held that a disclaimer in an employee handbook or personnel [policy] is sufficient to retain an employee's at-will status." Lawson, 139 F.3d at 693. This is the case even when the employee handbook or other policy provides that employees should only be terminated for certain reasons or after certain procedures, id. (citing Gilbert v. Tektronix, Inc., 112 Or. App. 34, 827 P.2d 919, 920-21 (1992)), or when the city had a "standard practice of affording hearings." Curtis v. City of Redmond, 303 F. App'x 560, 562 (9th Cir. 2008).

In this case, the undisputed evidence shows that City of Coos Bay Personnel and Administrative Directive No. 1 ("Directive No. 1") states: "Nothing contained in these policies and procedures is intended to confer any property right in continued employment, [or] to constitute a contract of employment...." Sherman Decl., Ex. 13, p. 5.   This language is virtually identical to the disclaimer in Lawson, which stated that "under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla." 139 F.3d at 691. The court held that this disclaimer controlled, even though personnel policies on employee discipline stated that "[n]o permanent employee shall be disciplined except for violation of established rules and regulations." Id. at 693.

Directive No. 1 also states that "[e]xcept at to those employees who are parties to a collective bargaining agreement, or a specific written contract of employment signed by a representative of the city, all employees of the city are 'employees at will,' subject to discharge at the sole discretion of the city."   Sherman Decl., Ex. 13, p. 5.   Plaintiff provides no evidence that she is a party to a collective bargaining agreement or that she had an employment contract with the City that provided her additional rights.   Thus, this disclaimer is controlling.[5]

---

[5]In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, plaintiff references a Coos Bay policy that provides: "In order to provide a fair method of correcting, and

20- OPINION AND ORDER

Therefore, her property interest claim must fail and summary judgment is granted on this claim.

### 2. Liberty Interest

The liberty interest prong of the due process clause "encompasses an individual's freedom to work and earn a living." Bollow v. Fed. Reserve Bank of San Francisco, 650 F.2d 1093, 1100 (9th Cir. 1981). Accordingly, a public employee is entitled to due process protection if the government stigmatizes the employee by making a charge against her that "impairs [her] reputation for honesty or morality." Matthews v. Harney County, Or., Sch. Dist. No. 4, 819 F.2d 889, 891 (9th Cir. 1987). A stigmatizing charge is one that "seriously damages a person's reputation" or "significantly forecloses his freedom to take advantage of other employment opportunities." Bollow, 650 F.2d at 1101 (citing Jablon v. Trustees of Cal. State Colleges, 482 F.2d 997, 1000 (9th Cir. 1973). Whether an employer's statements stigmatize an employee is generally a question of fact. Campanelli v. Bockrath, 100 F.3d 1476, 1480 (9th Cir. 1996).

In addition to the stigma, the plaintiff must show that "1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) the charge is made in connection

---

when necessary, disciplining employees, the city will use progressive discipline procedures with respect to non-bargaining employees." However, the court cannot locate this policy in any exhibit. In any case, Lawson establishes that the clear disclaimer would overcome such a policy.

with termination of employment." Brady v. Gebbie, 859 F.2d 1543,
1552 (9th Cir. 1988) (citing Matthews, 819 F.2d at 891-92). "When
reasons are not given, inferences drawn from dismissal alone are
simply insufficient to implicate liberty interests." Bollow, 650
F.2d at 1101.

Plaintiff's claim fails because she cannot show that
defendants made a charge against her.  As defendants correctly
point out, the press release was not a charge against plaintiff,
only a truthful statement that the Oregon State Police were
investigating allegations that plaintiff had shoplifted and that
she was on administrative leave. The press release and the ensuing
newspaper coverage, while surely distressing to plaintiff, did not
contain any charges by the City that called into question her
honesty or morality.

Neither do any statements in newspaper articles attributed to
Freeman or the City rise to the level of a charge against
plaintiff.  Freeman was quoted numerous times as saying that he
could not discuss the incident, but that "It's unfortunate that she
put us in the position she did. As a city manager I will take all
steps necessary to protect the public trust."  Creighton Decl.
(Second), Ex. 12.  Freeman also stated: "You have to have your
chief financial officer above reproach. As CEO, I have to be able
to trust that person whole heartedly," and that "If she is guilty,
she's got a big problem." Creighton Decl. (Second), Exs. 6, 13.

While the newspaper articles and the statements within them do call attention to the investigation of plaintiff, they are not charges that she is a liar or a thief.

Further, the statements by Freeman speaking to the necessity of trust and confidence are distinguishable from the charges that the Ninth Circuit found stigmatizing in <u>Brady</u>.  In that case, the employer issued a press release that detailed the many accusations against the doctor plaintiff, including that "through his systematic 16-year diversion of public funds [he] knowingly violated public trust and confidence [and that] trust and confidence in Oregon State Government cannot be restored if Dr. Brady continues to work."   <u>Brady</u>, 859 F.2d at 1547 (internal citations omitted).  This case does not present such accusations. That inferences can be drawn from the fact that plaintiff was dismissed does not create a genuine issue of material fact that the City made and published stigmatizing charges against her.  <u>Bollow</u>, 650 F.2d at 1101.  Therefore, summary judgment is granted.

<u>C. Whistleblowing</u>

Under Oregon's whistleblower statute, Or. Rev. Stat. § 659A.203(1), a public employer, such as the City, may not:

> (b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
>
>> (A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision;

(B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision...

To be eligible for whistleblower protection, an employee must reasonably believe that she is disclosing (1) a "violation of [a] federal or state law, rule or regulation" by the government, or (2) "mismanagement or gross waste of funds" resulting from government action. Id.; Bjurstrom v. Or. Lottery, 202 Or. App. 162, 168 (2005). Plaintiff argues that her complaints about Wall and his audit qualify in two ways: she disclosed mismanagement or a gross waste of funds under § 659A.203(1)(b)(B), and she disclosed a violation of law under § 659A.203(1)(b)(A). However, plaintiff does not present facts to show a "disclosure" of either one under the whistleblower statute.

In Bjurstrom, the Oregon Court of Appeals found that "the term 'disclose' may be understood to mean, in a general sense, 'to make known' or to 'open up to general knowledge,'" and that protected disclosures include "reports of wrongdoing within an agency or department," as well as to outsiders. 202 Or. App. at 169, 171 (citation omitted); see also Clark v. Multnomah County, 2007 WL 915175, at *14 (D. Or. March 23, 2007)(reports of wrongdoing are not "disclosures" unless they are made "to a person who was previously unaware of the information, meaning someone 'in a supervisory position, other than the wrongdoer himself'") (quoting Huffman v. Office of Personnel Mgmt., 263 F.3d 1341, 1351 (Fed.

Cir. 2001)).  This court must apply the Bjurstrom analysis to the
extent that the Court of Appeals' holding is applicable.  See Ryman
v. Sears, Roebuck & Co., 505 F.3d 993, 995 (9th Cir. 2007).

     Here, plaintiff did not "make known" or "open up to general
knowledge" any new information regarding mismanagement to Jansen or
City Council members in her email to Wall and Jansen on October 9,
2006, her file memo on October 25, 2006, or her letter to Jansen
and the City Council on December 19, 2006.  See Bjurstrom, 202 Or.
App. at 169.  In fact, Jansen knew that Wall would be sending a
supplemental bill to the City when she received the email from Wall
on October 8, 2006.

     In addition, Wall stated in his deposition that City Council
members had requested that he send the supplemental bill.  Wall
Dep. 56:16-57:25.  Plaintiff does not dispute this assertion and
therefore did not "disclose" this fact to her employer.  While she
may have provided some details in her email and memos that were
unknown to her employer, her main contribution to the discourse was
to voice her displeasure with the handling of the situation to the
very people who were responsible for the alleged mismanagement of
the City's funds.

     Further, plaintiff's internal complaints did not reveal
mismanagement as contemplated by the whistleblower statute.  Under
§ 659A.203(1), "mismanagement" refers only "to serious agency
misconduct having the effect of actually or potentially undermining

the agency's ability to fulfill its public mission." Bjurstrom, 202 Or. App. at 173.  Plaintiff fails to present evidence that she reasonably believed the City's actions rose to this level of wrongdoing.   Nor does plaintiff establish that she identified a gross waste of funds.  Simply asserting that she felt that paying Wall $936 for extra work and $11,500 for responding to plaintiff's ethical accusations was a gross waste of funds does not make that belief  reasonable  or  show  that  it  undermined  the  City's functioning.  Importantly, plaintiff conceded in her memo to the City Council that "the City Council has the right to ask for and approve the additional audit work."  Creighton Decl. (First), Ex. 14.  This statement does not evidence a good-faith belief of agency misconduct or a gross waste of funds, much less a reasonable belief.

Therefore, plaintiff's email and memorandum in October 2006 and her letter of December 19, 2006, do not constitute disclosures. Even if they did, she did not disclose mismanagement or a gross waste of funds.

Unlike her internal complaints, plaintiff's June 25, 2007, letter to the Oregon Board of Accountancy was sent to outsiders who presumably had no knowledge of the Wall billing dispute.  However, even though plaintiff believed she was disclosing a violation of ethical rules by Wall, the operative language of Or. Rev. Stat. § 659A.203(1)(b)(A) speaks to violations of law "by [a] state, agency

26- OPINION AND ORDER

or political subdivision....″  Plaintiff does not make any argument

why Wall should be considered a government entity for the purposes

of her whistleblower claim, and the court can conceive of no reason

why he should be.  Thus, she did not disclosure a violation under

§ 659A.203(1)(b).

Therefore, as a matter of law, neither plaintiff's internal

memoranda and letters nor her complaint to the Oregon Board of

Accountancy can be the basis for a whistleblower claim.

D. Wrongful Discharge

Plaintiff asserts a common law wrongful discharge claim

against the City, based on her termination for speaking out on the

audit.  In Oregon, wrongful discharge serves as a narrow exception

to the at-will employment doctrine where the discharge is against

public policy.  Draper v. Astoria Sch. Dist. No. 1C, 995 F. Supp.

1122, 1127 (D. Or. 1998), abrogated in part on other grounds by

Rabkin v. Or. Health Sciences Univ., 350 F.3d 967 (9th Cir.

2003)(citing Walsh v. Consolidated Freightways, Inc., 278 Or. 347,

351-52 (1977)).[6]  Under Oregon law, the availability of a common

law remedy, such as wrongful discharge, depends upon the absence of

---

[6]Oregon courts have recognized two circumstances that can
violate public policy and give rise to a wrongful discharge
claim:  (1) termination for fulfilling an important societal
obligation or duty or (2) termination for pursuing a private
statutory right directly related to employee's position that is
of great public concern.  Babick v. Or. Arena Corp., 160 Or. App.
140, 144 (1999); McGanty v. Straudenraus, 321 Or. 532, 551
(1995).

27- OPINION AND ORDER

a statutory remedy that adequately protects the public interest in question. Huff v. City of Portland, 2006 WL 572152, at *2 (D. Or. 2006); Price v. Multnomah County, 132 F. Supp.2d 1290, 1295 n. 6 (D. Or. 2001); Draper, 995 F. Supp. at 1130-31 (citing Delaney v. Taco Time Int'l, Inc., 297 Or. 10, 16 (1984)). Generally, this court recognizes that § 1983 provides adequate statutory remedies and precludes a claim for wrongful discharge when based upon the same allegations. See, e.g., Draper, 995 F. Supp. at 1131; Baynton v. Wyatt, 411 F. Supp. 2d 1223, 1225 (D. Or. 2006); Minter v. Multnomah County, 2002 WL 31496404, at *13-15 (D. Or. May 10, 2002).[7] This applies to plaintiff's claim under § 1983 for First Amendment retaliation. Baynton, 411 F. Supp. 2d at 1225.

Plaintiff argues that because a wrongful discharge claim requires protected conduct to be directly related to employment, and a retaliation claim requires protected speech to be unrelated to an employee's job duties, the two claims are in irreconcilable conflict and § 1983 cannot be an adequate remedy. However, this court has stated on numerous occasions that the question of whether a statutory claim provides an adequate remedy is not related to the merits of the claim. Baynton, 411 F. Supp. 2d at 1225; Minter, 2002 WL 31496404, at *14 ("the only inquiry is whether an

---

[7]Section 1983 may not be an adequate remedy in certain circumstances, such as claims against private employers, claims brought under respondeat superior, or when defendants raise qualified immunity defenses. Draper, 995 F. Supp. at 1131. None of these scenarios are applicable here.

alternative claim, *if proven*, provides an adequate remedy") (emphasis added).

Therefore, because plaintiff's remedies under § 1983 are essentially the same as they would be under wrongful discharge, plaintiff is precluded from bringing a common law wrongful discharge claim and summary judgment for the City is granted.

### IV. CONCLUSION

Plaintiff's claims for whistleblower retaliation under Or. Rev. Stat. § 659A.203(1), wrongful discharge, and violations of her due process rights under 42 U.S.C. § 1983 each fail as a matter of law. Therefore, defendants' motion for summary judgment (doc. #25) is GRANTED as to those claims and DENIED as to the plaintiff's First Amendment retaliation claim. Plaintiff's motion for partial summary judgment (doc. #29) is DENIED.

IT IS SO ORDERED.

Dated this ___9___ day of March 2011.


_____

Ann Aiken
United States District Chief Judge


29- OPINION AND ORDER